

# ARKANSAS COURT OF APPEALS

## DIVISION IV

**No.** CV-16-1023

| | |
|---|---|
| WILLIAM WHITFIELD HYMAN<br>APPELLANT<br><br>V.<br><br>BILL SADLER, IN HIS OFFICAL CAPACITY AS PUBLIC INFORMATION OFFICER FOR THE ARKANSAS STATE POLICE, AND THE ARKANSAS STATE POLICE, DIRECTOR, COLONEL BILL BRYANT<br><br>APPELLEES | **OPINION DELIVERED:** MAY 10, 2017<br><br>APPEAL FROM THE PULASKI COUNTY CIRCUIT COURT, NINTH DIVISION<br>[NO. 60CV-16-4681]<br><br>HONORABLE MARY SPENCER MCGOWAN, JUDGE<br><br>AFFIRMED |

## ROBERT J. GLADWIN, Judge

Appellant William Whitfield Hyman, an attorney, filed a complaint in the Pulaski County Circuit Court under the Arkansas Freedom of Information Act (FOIA), codified at Arkansas Code Annotated sections 25-19-101 to -110 (Repl. 2014 & Supp. 2015), to compel appellees Bill Sadler, public information officer for the Arkansas State Police, and the Arkansas State Police, Director Colonel Bill Bryant (collectively referred to as the ASP), to respond to his request for records, which included dash-cam surveillance video of Nathan Alexander Earp's arrest for DWI. Hyman had requested the material on Earp to aid in his representation of Earp at his driver control hearing. By order filed September 1, 2016, the trial court dismissed the complaint as moot because Hyman had received all the material he had requested. On appeal, Hyman argues that the trial court erred when it found that (1)

his complaint was moot; (2) the ASP rightly denied his request because of an undisclosed investigation; (3) the statutory three-day period to respond did not apply to Hyman's first FOIA request; and (4) Hyman was not a prevailing party for purposes of an award for attorney's fees by the Arkansas Claims Commission.    We affirm the trial court's determination that the issue was moot.

On July 15, 2016, Hyman emailed Sadler and made the following FOIA request to the Arkansas State Police:

1. Surveillance footage and audio from any building or vehicle (particularly the detention center, patrol vehicle, and transport station) of Nathan Alexander Earp and his related DWI charge on or about June 26, 2016, that may have recorded Nathan Earp.
2. Phone calls, dispatch audio recordings, and CAD logs at the time of the arrest.
3. Any police reports, narratives, or statements about the arrest, including narratives.
   . . . .
5. Any results or findings of a blood draw.

After Hyman sent an August 16, 2016 email to Sadler that noted the July 15, 2016 FOIA request, Sadler responded by email that he had received the request for records "associated with an open investigation relating to Nathan Alexander Earp."   Sadler opined that any video that existed documenting the alleged driving violation or arrest was exempt pursuant to Arkansas Code Annotated section 25-19-105(b)(6) (undisclosed-investigation exemption).[1]   He further advised that the evidentiary records sought might be obtained through the litigation and discovery process.

---

[1] (a)(1)(A) Except as otherwise specifically provided by this section or by laws specifically enacted to provide otherwise, all public records shall be open to inspection and copying by any citizen of the State of Arkansas during the regular business hours of the custodian of the records.

Hyman responded that the case was "closed by arrest" and was "not an open investigation." He threatened that if the ASP did not comply with his FOIA request, he "might be forced to file a civil suit to force [its] participation." Sadler responded, "Please contact the prosecuting attorney and request a subpoena or order and we will comply with the records we may have."

Hyman filed a FOIA complaint against the ASP on August 22, 2016, and claimed that ASP had refused to provide the videos and communications he had requested. He claimed that the undisclosed-investigations exception did not apply because Earp's DWI investigation was closed by citation on June 26, 2016, and there was no other suspected passenger in the vehicle. He alleged in his complaint that the videos he sought would not constitute an undisclosed or ongoing investigation.

A hearing was held on August 30, 2016, and Hyman testified that he had made a FOIA request via email to the ASP. He said he did not get a response from Sadler, so he sent him another email. He said that Sadler complied with some of it at that time, but specifically denied the request for video under the undisclosed-investigation exemption. Hyman stated that he believed the exemption did not apply because Earp had been "cited." He said that he made another request for the information that was denied, so he filed his

---

(b) It is the specific intent of this section that the following shall not be deemed to be made open to the public under the provisions of this chapter: . . .

(6) Undisclosed investigations by law enforcement agencies of suspected criminal activity . . . .

Ark. Code Ann. § (a)(1)(A), (b)(6).

complaint in circuit court. He further testified that the ASP's response on August 23, 2016, was in violation of FOIA because it was given over a month after the first request had been made. He added that after he had filed his complaint in circuit court, Earp pled guilty on August 22, 2016.

Sadler testified that he did not see the email request dated July 15, 2016, because he had been in Rison, Arkansas, on that date preparing for his mother's funeral. He said that he saw the substantially similar email dated a month later, and the ASP responded to Hyman's request but denied portions of it. He also said that Earp pled guilty on August 22, 2016, and the ASP provided the records requested by Hyman on August 23, 2016, because the ongoing-investigation exemption no longer applied.

After the testimony that the records requested pursuant to FOIA had been provided, the trial court asked, "Why are we here?" Hyman responded, "Well, your Honor, in order for me to recover attorney's fees, I have to substantially prevail." He explained that he would have to request attorney's fees through the Arkansas Claims Commission. He also stated that he did not think the issue was moot because of the public interest involved.

The ASP responded that the issue was moot because the requested records had been provided. The ASP explained that, after the lawsuit was filed, Earp pled guilty, which was an intervening act; and because the exemption no longer applied, the records were immediately provided. The trial court ruled that the issue was moot and that Hyman was not a prevailing party for purposes of his attorney's-fee claim, and an order to that effect was filed on September 1, 2016. Hyman brings this appeal.

This court liberally interprets the FOIA to accomplish its broad and laudable purpose that public business be performed in an open and pubic manner. *Nabholz Constr. Corp. v. Contractors for Pub. Prot. Ass'n*, 371 Ark. 411, 266 S.W.3d 689 (2007). We broadly construe the FOIA in favor of disclosure. *Id.*

In a FOIA case, the standard of review is whether the trial court's findings were clearly erroneous or clearly against the preponderance of the evidence. *Pulaski Cty. v. Ark. Democrat-Gazette, Inc.*, 371 Ark. 217, 264 S.W.3d 465 (2007). The issue of the applicability of the FOIA is a question of statutory interpretation, which we review de novo, because it is for this court to determine the meaning of a statute. *Hollis v. Fayetteville Sch. Dist. No. 1 of Washington Cty.*, 2016 Ark. App. 132, 485 S.W.3d 280.

We have held that for a record to be subject to the FOIA and available to the public, it must (1) be possessed by an entity covered by the Act, (2) fall within the Act's definition of a public record, and (3) not be exempted by the Act or other statutes. *Hopkins v. City of Brinkley*, 2014 Ark. 139, at 3, 432 S.W.3d 609, 612 (citing *Nabholz*, 371 Ark. at 416, 266 S.W.3d at 692).

It is a well–settled rule that this court does not render advisory opinions or answer academic questions. *Stilley v. McBride*, 332 Ark. 306, 965 S.W.2d 125 (1998). Under Arkansas law, a case becomes moot when any judgment rendered would have no practical effect on an existing legal controversy. *Id.* However, when the case involves the public interest, or tends to become moot before litigation can run its course, or a decision might avert future litigation, the Arkansas Supreme Court has, with some regularity, refused to permit mootness to become the determinant. *Id.* (citing *Campbell v. State*, 300 Ark. 570,

781 S.W.2d 14 (1989)); *see also Bd. of Dirs. of Hot Springs v. Pritchett*, 2015 Ark. 17, at 3, 454 S.W.3d 223, 226 (where the issue of Hot Springs City Board's vote at a regular meeting to cease televising the public-comment period rendered issues on appeal moot, and court held that issue was dependent on unique facts and raised no issue of substantial public interest that would prevent future litigation if addressed). Examples of cases involving issues of public interest include *Kelley v. Johnson*, 2016 Ark. 268, 496 S.W.3d 346 (whether FOIA provision keeping the identification of the lethal-injection-drug supplier in case brought by death-row inmates offended Arkansas Constitution); *Stilley*, *supra* (whether police officers' home addresses from personnel files sought for purposes of serving officers by mail rather than undertake expense of serving them in person in underlying section 1983 action, were protected from disclosure under exemption for personnel records).

This case turns on the answer to Hyman's first point on appeal—whether the trial court erred when it ruled that Hyman's FOIA complaint was moot. He cites *Stilley*, *supra*, and contends that the ASP's handling of his request was a matter of public interest. He argues that in *Stilley*, an attorney requested information from the City of Fort Smith on two police officers who were named in a section 1983 lawsuit. *Stilley*, 332 Ark. at 309, 965 S.W.2d at 126. When his request was denied by the city, the attorney filed a FOIA complaint. *Id*. The attorney was in possession of the information he had requested by the time the trial court had a hearing, but the parties proceeded with stipulations of facts, testimony, and arguments, and the trial court held that the officers' home addresses were exempt from disclosure under Ark. Code Ann. § 25-19-105(b)(10) because the information was a clearly unwarranted invasion of personal privacy. *Id*. at 309–10, 965 S.W.2d at 126.

On appeal, the Arkansas Supreme Court determined that mootness was overcome by an issue of public interest, that is whether the officers' personal privacy outweighed the public's right under FOIA. *Id.* at 310, 965 S.W.2d at 126.

Hyman contends that the important similarity between his case and *Stilley* is that the information sought under FOIA had been provided by the time of trial. Hyman contends that the public interest in his case is that "every FOIA recipient could deny every FOIA request, and then acquiesce the day after a lawsuit is filed to render the suit moot."

We agree with ASP's contention that the record in this case establishes that ASP had an ongoing criminal investigation regarding Earp's DWI arrest, then considered the investigation closed when Earp entered a guilty plea. It was not clearly erroneous for the trial court to conclude that this intervening event was unrelated to Hyman's FOIA request or his lawsuit. When ASP learned of Earp's plea, it promptly disclosed the requested video. There was no evidence that ASP acquiesced to Hyman's request in order to render the lawsuit moot. Further, Hyman has not articulated a viable theory under which this case presents issues of substantial public interest that justify rendering an advisory opinion. In *Stilley*, the Arkansas Supreme Court engaged in a lengthy discussion regarding the balance between an officer's personal-privacy rights and the public interest in disclosure of information in officers' personnel files. *Stilley*, *supra*. The court's reasoning in finding an exception to the mootness doctrine in *Stilley* does not apply here. The purpose of Hyman's request for the dash-cam video of Earp's arrest was not to evaluate the performance of public officials but to aid him in his representation of Earp at a driver control hearing.

SLIP OPINION

In his reply brief, Hyman cites *Whalen v. State*, 2016 Ark. 343, 500 S.W.3d 710, for the proposition that cases relating to DWIs are matters of public interest. We agree that *Whalen* scrutinized sobriety checkpoints to determine their constitutionality. Nevertheless, Hyman's interest in the information held by the ASP was to aid in his decision-making in regard to his representation of Earp, not to question the constitutionality of DWI arrests. Accordingly, we affirm the trial court's decision that Hyman's claim was moot and do not address his remaining points on appeal.

Affirmed.

GRUBER, C.J., and VAUGHT, J., agree.

*King Law Group PLLC*, by: *William Whitfield Hyman*, pro se appellant.

*Leslie Rutledge*, Att'y Gen., by: *Colin R. Jorgensen*, Sr. Ass't Att'y Gen., for appellee.