KAREN R. BAKER, Associate Justice
Appellants, the Arkansas Department of Correction and Wendy Kelley, in her official capacity as Director of the Arkansas Department of Correction ("ADC"), appeal from the Pulaski County Circuit Court's order requiring the ADC to provide appellee Steven Shults with the pharmaceutical package inserts and labels for its supply of potassium chloride, one of the drugs in the State's execution protocol. On appeal, the ADC contends that the lethal-drug information requested by Shults is confidential and not subject to disclosure under the Method of Execution Act ("MEA"), Arkansas Code Annotated section 5-4-617 (Supp. 2017). In the alternative, the ADC contends that, even if the information is not confidential under the MEA, it is still required to redact certain information from the drug labels to protect the confidentiality of sellers and suppliers in the chain of distribution. We affirm in part and reverse in part.
On March 23, 2017, Shults, an Arkansas resident and attorney, filed a complaint against the ADC after it refused to provide him with public records pertaining to the State's supply of potassium chloride pursuant to his Arkansas Freedom of Information Act ("FOIA") request. Shults alleged that on February 9, February 27, and March 7, 2017, Shults submitted FOIA requests to the ADC, seeking, in part, documents and records held by the agency after November 30, 2016, containing "the name of chemicals or substances intended or considered for use in lethal injection executions, manufacturer/compounder, concentration, expiration date(s) and/or lot numbers of all chemicals or substances intended or considered for use in executions currently in the possession of the ADC." On March 10, 2017, the ADC responded to the request by providing records stating that on March 8, 2017, Kelley had recently acquired 100 vials of potassium chloride, a drug listed in its execution protocol. The ADC refused to disclose the package inserts or labels for the newly acquired supply of potassium chloride because it stated that these documents could be used to identify the sellers or suppliers of the drug in violation of the MEA. Shults contended that the ADC's interpretation of the MEA was in violation of the statute and of his rights under the FOIA, that the ADC was not substantially justified in its refusal to provide the requested records, and that he was entitled to unredacted copies of the drug labels and package inserts.
On March 29, 2017, the ADC answered and affirmatively moved to dismiss the complaint. The ADC also filed a brief in support, arguing that Shults had failed to state a FOIA claim because the records he sought were specifically exempted from public disclosure by the MEA. The ADC took the position that the lethal-drug labels and package inserts readily identify the drug manufacturers, who are sellers and suppliers protected by the plain language of the confidentiality provisions in the MEA. The ADC attached the affidavit of Rory Griffin, the deputy director of *412 Health and Correctional Programs with the ADC. Griffin stated that the ADC had attempted to comply with both the disclosure and confidentiality provisions of the MEA in response to past FOIA requests; however, even when the ADC had provided redacted copies of lethal-drug labels and package inserts, some recipients had been able to determine the identity of the drugs' manufacturers by comparing the redacted labels and inserts to publicly available information. Griffin stated that this is because each manufacturer's labels and package inserts are unique with respect to format, style, diction, font, organization, grammar, spelling, size, shape, coloring, and appearance. Griffin stated that, given the unique character of drug labels and package inserts, the only way for the ADC to comply with the confidentiality provisions of the MEA was to decline disclosure of these records entirely.
On March 30, 2017, the circuit court held a hearing on Shults's complaint, and on March 31, 2017, the circuit court entered an order granting Shults's request that he be provided with the unredacted potassium chloride labels and package inserts. The circuit court held that the General Assembly did not intend to protect the identity of manufacturers of drugs used in the ADC's lethal-injection protocol. On April 3, 2017, the ADC filed a notice of appeal, and we granted its request for an emergency stay of the order pending appeal.
While briefing in this case was ongoing, Shults filed a nearly identical FOIA complaint against the ADC with respect to its refusal to disclose labels and inserts pertaining to midazolam, another drug used in the execution process. The circuit court in that case also ordered disclosure of the unredacted records, and the ADC appealed. We granted a stay of the circuit court's order and also granted Shults's motion to expedite the appeal. Ark. Dep't of Corr. v. Shults , 2017 Ark. 300, 529 S.W.3d 628 ( Shults I ). In Shults I , a majority of this court affirmed in part and reversed and remanded in part. Applying our rules of statutory interpretation, we held that drug manufacturers are not included within the MEA's confidentiality provisions. Id. We reversed, however, the portion of the circuit court's order requiring the ADC to disclose unredacted records. Id. We remanded for the circuit court to determine "which information must be redacted on the midazolam labels and/or package inserts at issue." Id. at 10, 529 S.W.3d at 634. We now have the same issues before us in this current appeal with respect to the ADC's records pertaining to its supply of potassium chloride.
The issue presented on appeal is strictly one of statutory interpretation of Ark. Code Ann. § 5-4-617. We review issues of statutory interpretation de novo, as it is for this court to determine the meaning of a statute. Dep't of Ark. State Police v. Keech Law Firm, P.A. , 2017 Ark. 143, 516 S.W.3d 265. The primary rule of statutory interpretation is to give effect to the intent of the legislature. Keep Our Dollars in Independence Cty v. Mitchell , 2017 Ark. 154, 518 S.W.3d 64. We first construe the statute just as it reads, giving the words their ordinary and usually accepted meaning in common language. Id. In conducting this review, we will reconcile statutory provisions to make them consistent, harmonious, and sensible in an effort to give effect to every part. Id. Furthermore, we will not read into a statute language that was not included by the legislature. Id.
Here, the statute at issue, Ark. Code Ann. § 5-4-617, provides in pertinent part:
(i)(1) The procedures under subdivision (g)(1) of this section, the implementation of the procedures under subdivision (g)(1) of this section, and the identities of the entities and persons who participate in the execution process or administer *413 the lethal injection are not subject to disclosure under the Freedom of Information Act of 1967, § 25-19-101 et seq.
(2) The department shall keep confidential all information that may identify or lead to the identification of:
(A) The entities and persons who participate in the execution process or administer the lethal injection; and
(B) The entities and persons who compound, test, sell, or supply the drug or drugs described in subsection (c) of this section, medical supplies, or medical equipment for the execution process.
(3) The department shall not disclose the information covered under this subsection in litigation without first applying to the court for a protective order regarding the information under this subsection.
(j) The department shall make available to the public any of the following information upon request, so long as the information that may be used to identify the compounding pharmacy, testing laboratory, seller, or supplier is redacted and maintained as confidential:
(1) Package inserts and labels, if the drug or drugs described in subsection (c) of this section have been made by a manufacturer approved by the United States Food and Drug Administration;
(2) Reports obtained from an independent testing laboratory; and
(3) The department's procedure for administering the drug or drugs described in subsection (c) of this section, including the contents of the lethal-injection drug box.
In its brief, the ADC argues that the circuit court erred by ordering it to provide Shults with copies of the potassium chloride labels and package inserts because these records would identify the drug manufacturer, who the ADC contends is not subject to disclosure under the MEA's confidentiality provisions. However, in its reply brief, which was filed subsequent to our decision in Shults I , the ADC has abandoned its argument regarding manufacturers and instead asserts that this case is controlled by Shults I -stating the court's decision in Shults I is now final and controls the outcome of this case. We agree.
In Shults I , we were presented with the same issue as in this case. In Shults I , we held that the identity of the drug manufacturers is not protected under the "seller" and "supplier" confidentiality provisions of Arkansas Code Annotated § 5-4-617,
A review of the entire statute ... reveals that the legislature explicitly referred to a "manufacturer" of lethal drugs in two different subsections. See Ark. Code Ann. § 5-4-617(d)(1) & (j)(1).... This demonstrates that the legislature was aware of the differences between the terms "manufacturer," "seller," and "supplier" and that it could have easily included "manufacturer" among the entities whose identity was confidential for purposes of the MEA had it intended to do so. We have repeatedly held that we will not read into a statute language that was not included by the legislature. E.g. , [ Keep Our Dollars in Independence Cty. v. Mitchell , 2017 Ark. 154, 518 S.W.3d 64 ]; Scoggins v. Medlock , 2011 Ark. 194, 381 S.W.3d 781 ; Potter v. City of Tontitown , 371 Ark. 200, 264 S.W.3d 473 (2007).
....
We interpret AFOIA liberally to promote free access to public information. [ Dep't of Ark. State Police v. Keech Law Firm, P.A. , 2017 Ark. 143, 516 S.W.3d 265 ]. In addition, we interpret any exemptions to AFOIA narrowly and in favor of disclosure. Id. ; Ark. State Police v. Wren , 2016 Ark. 188, 491 S.W.3d 124. Based on the foregoing principles, we conclude that the circuit court was correct *414 in determining that the identity of drug manufacturers is not protected under the confidentiality provisions of section 5-4-617, and we affirm this ruling.
Shults I , 2017 Ark. 300, at 6-8, 529 S.W.3d at 632-33.
Here, simply put, the holding from Shults I is directly on point with the case before us, and we affirm the circuit court's finding that the identity of drug manufacturers is not protected under the confidentiality provisions of Ark. Code Ann. § 5-4-617.
Next, we address the ADC's alternative argument that even if we agree with the circuit court that the confidentiality of manufacturers is not protected under the statute, it is still required to redact certain information such as lot, batch, and/or control numbers that could lead to the identification of other sellers and suppliers in the chain of distribution. We agree. Pursuant to Ark. Code Ann. § 5-4-617(j), if package inserts and drug labels are made available to the public, any information that could be used to identify the seller or supplier must be redacted and maintained as confidential. In Shults I , we held that because disclosure of information such as lot, batch, and/or control numbers could lead to the identification of the seller and/or supplier of the midazolam, the ADC was required to redact and maintain this information as confidential under section 5-4-617(j). We also held that our holding was supported by "FDA regulations, which require that drug labels contain information revealing 'the complete history of the manufacture, processing, packing, holding, and distribution of a batch or lot of drug product[.]' 21 C.F.R. § 210.3(b)(11) (2011).' " Id. at 9, 529 S.W.3d at 634. Accordingly, here, consistent with Shults I , because disclosure of information such as lot, batch, and/or control numbers could lead to the identification of the seller and/or supplier of the potassium chloride, the ADC is required to redact and maintain this information as confidential under section 5-4-617(j). We therefore reverse that portion of the circuit court's order requiring disclosure of the unredacted records and remand for the court to determine, based on the evidence presented by the parties, which information must be redacted on the potassium chloride labels and/or package inserts at issue.
Affirmed in part; reversed in part and remanded.
Kemp, C.J., and Wood, Wynne, and Womack, JJ., concur in part and dissent in part.